## John Gubbins v. Bank of Commerce et al.

1. VOLUNTARY ASSIGNMENTS—*Recovery of Money Fraudulently Paid by Collusion of the Assignor.*—If an insolvent could not recover moneys fraudulently paid as salary to an employe, neither can the assignee nor the creditors acting in his stead recover them.

2. SAME—*Where the Assignor Could Not Recover, the Assignee or Creditors Can Not.*—Where an insolvent assignor could not have invoked the aid of a court at law or in equity to recover back moneys fraudulently paid, the creditors, acting in lieu of his assignee, can not do so.

3. CORPORATIONS—*Money Fraudulently Paid to Officers.*—Where a corporation unlawfully and fraudulently agrees to pay moneys to one of its officers, and in accord with such agreement pays a portion thereof, the corporation and the officers being *in pari delicto*, the courts will neither aid the one in enforcing the agreement nor the other in recovering back moneys paid under it.

4. SAME—*Presumed Powers of the President.*—A president of a corporation will be presumed to have had authority to transact the ordinary business of the corporation.

5. SAME—*Duty of the President in Transacting Business.*—In the transaction of the business of the corporation the president is bound only to exercise his best skill and ability, with such care and diligence as might be expected in his own affairs. He can not be charged with the consequences of an honest error of judgment.

6. SAME—*Managers—When Not Liable for Fraud.*—The manager

of a corporation is not liable for fraud in every instance where an error of judgment occurs in his management.

7. REMEDIES—*Illegal Agreements.*—Where parties concerned in illegal agreements are *in pari delicto*, the law will not aid either, but will leave them without remedy against each other.

Voluntary Assignment Proceedings.—Appeal from the County Court of Cook County; the Hon. JOHN H. BATTEN, Judge, presiding. Heard in this court at the March term, 1898. Reversed and remanded. Opinion filed November 16, 1898.

## STATEMENT.

This cause was heard in the County Court upon the claim of appellant for $18,457.89 against the Excelsior Machine and Boiler Works, an insolvent corporation, the assets of which were being administered in that court, and upon exceptions thereto by certain creditors of the corporation. The items which made up the claim of appellant were in effect conceded to be correct by the excepting creditors, but they alleged that the insolvent corporation was entitled to a set-off against this claim for salary fraudulently paid by the corporation to appellant, as its president and general manager, and for the value of an improvement, viz., a riveting machine, bought by the corporation under the direction of appellant and placed upon real estate owned by appellant and occupied by the corporation under lease from appellant.

At the time of the organization of the corporation in question, appellant was the owner of a machine and boiler works plant and business, in which he had been earning profits of $10,000 or more per annum. This plant and business he sold to the corporation and received payment therefor in stock. There were six hundred shares of the capital stock. At the formation of the corporation appellant was the owner of one-third thereof, one-third was owned by one Lockstaedt, and the remaining third was owned by one Oberndorf and James F. Gubbins, a brother of appellant, each owning one-sixth of the entire stock. The first board of directors consisted of appellant, Oberndorf and Lockstaedt. Appellant was thereupon elected president, Obern-

dorf was elected secretary and treasurer, and Lockstaedt was elected general manager.

At the date of the formation of the corporation, both Lockstaedt and appellant had various outstanding business matters which required their attention, and it was agreed that no salaries should be paid at first, but that the working officers should draw a small stipend weekly for expenses, until such time as they could devote their entire attention to the affairs of the corporation, and during this period the general management of the business rested in the control of Lockstaedt.

In May, 1893, about six months after the organization, appellant, having closed up his matters of private business, took active charge of the affairs of the company, and thereafter and until the time of the assignment devoted his entire time to the work of the company, being in effect president, general manager and mechanical superintendent of the works. Lockstaedt withdrew from the business and left the city at about the time when appellant assumed the management, and James F. Gubbins was elected director and vice-president in lieu of Lockstaedt.

Early in June and shortly after the withdrawal of Lockstaedt, a meeting of the board of directors was held and a salary of $6,000 per annum voted to appellant, a salary of $3,000 per annum to Oberndorf, and a salary of $1,500 per annum to James F. Gubbins, with the agreement that they should each devote his entire time to the affairs of the company. Previous to this time James F. Gubbins had sold to appellant fifty shares of the stock held by him, so that at the time the salaries were voted, appellant held 250 shares, James F. Gubbins 50 shares, Lewis Oberndorf 100 shares, and 200 shares were held by certain parties who had succeeded to the interest of Lockstaedt. In addition to the fifty shares purchased by appellant from James Gubbins, he held James Gubbins' remaining fifty shares as collateral to a note which James Gubbins had given him.

In March, 1895, appellant and Oberndorf jointly purchased the stock formerly owned by Lockstaedt. Some

months later, at a meeting of the directors, the salaries of the officers were reduced—for the reason expressed in the resolution that the business did not warrant the salaries paid—to $37.50 per week and incidental expenses to the president, $25 per week to the secretary and treasurer, and $10 per week to the vice-president.

In the fall of 1895, appellant purchased the stock owned by Oberndorf, and the latter severed his connection with the company, one share of the stock being transferred to an employe, Olson, who succeeded Oberndorf as director and secretary. In November, 1895, a riveter, used in boiler-making, was purchased by the corporation through its president, appellant, and installed on the premises leased by him to the company. This machine weighs some thirty tons, and its installation required considerable alterations in the building and the sinking of heavy foundations thereunder. The cost of the machine was some $5,500, and of freight, installation, etc., some $2,500 additional.

On December 28, 1896, the corporation made a general assignment for the benefit of its creditors. The premises occupied by the insolvent corporation were rented from appellant at a rental of $1,800 per year. The rent was some $5,175 in arrears at the time of the assignment. In December, 1895, appellant, from his private funds, loaned to the Excelsior Machine & Boiler Works $5,000 in cash, and during the ensuing year $6,000 more in cash, nearly all of which remained unpaid at the time of the failure. In November, 1896, the claimant, in order to procure an extension of a note of the corporation then falling due, guaranteed a four months' renewal thereof, which, amounting to some $2,022, he paid after the assignment.

The court in its decree allowed the claim of appellant on the items above mentioned at $18,457.79, but offset against this the difference between the salary voted and paid to the claimant, which amounted to $15,859, and the amount of such salary, fixed at $25 per week, and also the amount of $4,000, paid out by the corporation in the purchase and installation of the riveter, the total of such off-set being

$15,134. The claim of appellant was reduced, by these items allowed as set-off, to the sum of $3,023.79, for which amount it was allowed.

From the decree so allowing the set-off this appeal is prosecuted.

STEIN & PLATT, attorneys for appellant.

FELSENTHAL & D'ANCONA and JEROME PROBST, attorneys for appellees.

MR. JUSTICE SEARS delivered the opinion of the court.

No serious question is made as to the items of appellant's claim. The only questions presented and urged upon this appeal relate to the decree of the County Court allowing the two items of set-off as against the claim of appellant. The first of these items is the amount of salary, which the court found to have been fraudulently paid by the insolvent to appellant. The grounds upon which the trial court found the payment of the salary to have been fraudulent, appear to have been that the salary paid was excessive in amount, and that it was only authorized by a vote of the board of directors, in which vote appellant participated as a member of the board.

Various questions are raised in the arguments as to the correctness of the decree in this regard. We need consider but one of them, viz.: whether the insolvent corporation itself could at law or in equity have obtained a recovery of moneys which it had fraudulently paid as salary to appellant, its president. It is, in effect, conceded by counsel for appellees that if the insolvent could not recover the moneys thus paid, then neither could the assignee nor the creditors acting in the County Court in lieu of the assignee, recover them. Bouton v. Dement, 123 Ill. 142; Ide v. Sayer, 129 Ill. 230.

We regard the decision of the Supreme Court in McNulta v. Corn Belt Bank, 164 Ill. 427, as decisive of this question. The court there held that where a corporation had unlaw-

fully and fraudulently agreed to pay moneys to one of its officers, and in accord with such agreement had paid a portion of the moneys, that the corporation and the officer being in *pari delicto*, the courts would neither aid the one in enforcing the agreement nor the other in recovering back moneys paid under it. In so holding the court used the following language :

" Where parties concerned in illegal agreements are *in pari delicto*, the law will not aid either, but will leave them without remedy against each other. We are, therefore, of the opinion that appellant is not entitled to recover the bonus claimed by him upon the unissued stock, and that under its plea of set-off appellee is not entitled to recover back what has already been paid to appellant."

We think that the doctrine applies equally here, where the court found that the salary paid to appellant was fraudulently paid, because such salary was authorized only by vote of a board of directors of which appellant was a member participating in the vote. The authorities cited by appellees bear upon the right of the corporation to disown such a contract so far as it remains executory, rather than upon the right of the corporation itself to recover back moneys paid thereunder. Decisions of other jurisdictions are cited by appellant as announcing the same rule as held in the McNulta case, to which it is unnecessary to refer in view of this decision of our own State.

We hold, therefore, that as the insolvent could not invoke the aid of any court at law or in equity to recover back the moneys so paid to appellant, the excepting creditors, who are acting here only in lieu of the assignee, can not thus obtain for the insolvent a recovery thereof. In so holding, we have no occasion to pass upon the question raised as to the right of stockholder or creditor, acting in his own behalf, to reach such funds by independent action, or as to the power of the County Court in general to allow such equitable set-off as the insolvent or its assignee might be entitled to enforce.

We come, then, to a consideration of the second item allowed in the set-off, viz., an amount equal to one-half the

cost of the riveting machine, being the amount already paid by the insolvent before assignment on account of the purchase of the machine. After a careful examination of all the evidence, we are inclined to view the finding of the trial court, to the effect that there was fraud in the action of appellant in procuring the purchase of the machine by the corporation and its installment upon the realty in question, as not sustained by the evidence here presented.

It is conceded by counsel for appellee that appellant, as president of the corporation, will be presumed to have had authority to transact ordinary business of the corporation.    C., B. & Q. R. R. Co. v. Coleman, 18 Ill. 297; Mitchell v. Deeds, 49 Ill. 416; Smith v. Smith, 62 Ill. 493.

And in the transaction of such business he was bound only to exercise his best skill and ability, with such care and diligence as might be expected in his own affairs.    He can not be charged with the consequences of an honest error of judgment.    Morawetz on Corp. 553.

It appears uncontradicted that appellant, in making the purchase, acted at the suggestion and under the advice of a Mr. Best, who had been employed by the company to take charge of the boiler department in which the machine was to be used.    Also, that a Mr. Scully, a large dealer in boiler supplies, had urged appellant to purchase, stating to him, in effect, that without modern appliances the company could not compete with rivals.    Also, that a Mr. Wood, who, like Scully, was interested in the sale of the machine, represented to appellant that the riveter would greatly decrease the cost of manufacture in the company's business of boiler making.

Scully, who was a witness for appellees, testified:

" I might have made the first suggestion to Mr. Gubbins about his putting in a riveter.    I might have told him I thought it would be a pretty good thing for him to have it to lessen his expenses, but I think the first suggestion came from some one in Mr. Gubbins' employ to run his boiler shop. That was Mr. Best, whose first suggestion to Mr. Gubbins was that he ought to have a riveter.    I think he rather convinced Mr. Gubbins that it would be a good scheme.    About

that time I met Mr. Gubbins and we talked it over, and I suggested that it would be a good scheme."

Appellant testified:

"At the time of the purchase of the riveter I was largely influenced by Mr. Scully.  He said that there was no doubt about the times after election; he says, ' Gubbins, you will be then in shape if you put these tools in, to be able to make some money,' and I said, ' By gracious, I think I am going to chance it; I feel the same way; I can't do anything now and it is the only alternative.  I am going to risk it.'  I told him that I wanted Mr. Oberndorf before he went out to go in and do it, but he did not feel disposed to do it.  Now I have brought him out, and I am going ahead or shut up shop.  That was the very words I used; try to make some money or else quit."

More than a year intervened between the purchase of the machine and the failure of the corporation, and during that year appellant loaned to the corporation some eleven thousand dollars.  While it doubtless proved that the purchase was unwise and probably hastened the failure of the corporation, because the machine did not accomplish the work for which it was bought, yet we find in all the evidence nothing to indicate that the appellant was guilty of fraud in making the venture.  On the contrary it would seem that under the suggestions and advice of those presumably competent to advise, the conduct of appellant was such as he would naturally and probably have followed had it been in his own private affairs.  It would be a harsh doctrine to hold the manager of a corporation liable as for fraud in every instance where an error of judgment might occur in his management.  Nor do we find any evidence of fraud in the mere fact that this machine was installed upon ground owned by appellant and leased to the corporation.  The corporation had no other place of business, and the machine, if purchased, must have been placed there.  There is nothing to warrant a finding that in so locating the machine appellant had any ulterior purpose, or that he then intended to take any unconscionable advantage of his position of landlord in his dealings with the corporation.

In the course of the administration of the insolvent estate

the question arose as to whether the machine was a part of the realty, or subject to sale as part of the assets of the insolvent.

At the assignee's sale, which purported to dispose of all the assets of the estate, Scully offered to advance the bid by the sum of $1,800 if he might remove the machine. The attorney for appellant announced that appellant would insist upon all his rights as owner of the fee, upon which announcement the county judge presiding stated that appellant should not be required to make any offer as to his actions in the premises. The machinery was all bid in by one Collins, who, it appears, was bidding in for the benefit of appellant.

This state of facts may lead to the conclusion that appellant has, in the administration of the assets, profited by this relation of landlord and lessor of the insolvent. But we are not prepared to hold that this would warrant a conclusion that the original purchase of the machine was made with any view to such an advantage, and hence was fraudulent. It is not contended that there was any error or impropriety in the action of the County Court in disposing of the assets.

We hold that upon the evidence here presented neither item of offset should have been allowed.

Objections to the sufficiency of the record have been met by the filing of the additional record. We think that the bill of exceptions was properly certified. The certificate shows that the judge who signed and sealed the bill was a judge then presiding in that court.

For the reasons above indicated the decree is reversed and the cause remanded.