THE PEOPLE *ex rel.* ILLINOIS RACING BOARD, Plaintiff-Appellant, *v.* BLACKHAWK RACING ASSOCIATION, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 78-1389

■■■■

Opinion filed November 5, 1979.

William J. Scott, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellant.

John C. Castanes, James J. Flynn, and Houlihan & Flynn, all of Chicago, for appellees Joseph Phillips Caruso, Lawrence Airdo, Salvatore Pernice, Vincent Alesia, and Charles McAllister.

Fishleder and Adler, of Chicago (Charles E. Adler, of counsel), for appellee Sidney Blumberg.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The Illinois Racing Board (hereinafter Board) brings this appeal from an order of the circuit court of Cook County dismissing count II of the Board's first amended complaint for failing to state a cause of action. (Ill. Rev. Stat. 1977, ch. 110, par. 45.) This appeal focuses upon whether an officer-director of a horse racing organization licensee may be held personally liable for the failure of the corporate licensee to turn over the proceeds from the unclaimed parimutuel tickets to the Illinois Veterans'

Rehabilitation Fund (hereinafter Fund) as required by section 26(c) of the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1977, ch. 8, par. 37—26(c)). For the reasons hereinafter stated, we affirm.

The nature of this case does not dictate an elaborate recitation of facts. It is sufficient to note that the three corporate defendants, Blackhawk Racing Association, Rock Valley Trotting Association, and Big River Trotting Association, were incorporated in 1974 and received organizational racing licenses for 1975. The noncorporate defendants are directors of the corporations who also hold positions as officers in the three corporations. (Hereinafter the noncorporate defendants will be referred to solely as directors of the corporation.) The three corporate defendants were involuntarily dissolved by the Secretary of State on December 1, 1976, for failing to file an annual report or to pay their annual franchise taxes. Ill. Rev. Stat. 1975, ch. 32, par. 157.82a.

The present suit was filed because the defendant corporations did not turn over any of the proceeds from the unclaimed parimutuel tickets for the 1975 horse racing season by April 10, 1976, as required by section 26(c). (Ill. Rev. Stat. 1977, ch. 8, par. 37—26(c).) The Board sought an accounting of any and all unclaimed parimutuel tickets issued during the 1975 racing season by the corporate defendants and payments of the amount outstanding on these tickets by either the corporate entities or the directors. Count I of the first amended complaint alleged the liability of the corporate defendants and is still pending. The present appeal pertains solely to count II. In count II the Board alleged that the directors of the three corporate defendants should be held personally liable for the amount due the State by the corporate entities because they: (1) breached their statutory duty to manage the corporations in such a manner as to insure the payment of the proceeds of the unclaimed parimutuel tickets; (2) negligently mismanaged the corporations in such a manner that they each became insolvent and failed to pay the sums owing to the Fund; and (3) violated their duty as trustees of the unclaimed parimutuel ticket money by failing to protect the money from dissipation prior to the April 10, 1976, date on which the money was due.

■■ ■ We turn first to the Board's argument that its first amended complaint states a cause of action under section 26(c). (Ill. Rev. Stat. 1977, ch. 8, par. 37—26(c).) That section states:

> "(c) The sum held by any organization licensee for payment of outstanding pari-mutuel tickets, if unclaimed prior to April 1 of the next year, shall be retained by the organization licensee for payment of such tickets until that date. Within 10 days thereafter, the balance of such sum remaining unclaimed shall be paid to the 'Illinois Veterans' Rehabilitation Fund' of the State treasury."

The Board contends that this section should be construed to require an

officer-director of an organizational licensee to segregate the sum of the unclaimed parimutuel tickets in a fund. The failure to so segregate the sum of the unpaid parimutuel tickets, the Board alleges, constitutes a breach of the statute and gives rise to the personal liability of the officer-director for the amount due by the corporation under the Act. We do not accept this construction. It is a settled principle of corporate law that the directors and officers of a corporation will not be held personally liable for the acts or omissions of the corporation. (*Polivka v. Worth Dairy, Inc.* (1974), 26 Ill. App. 3d 961, 328 N.E.2d 350; *Gowdy v. Richter* (1974), 20 Ill. App. 3d 514, 314 N.E.2d 549.) Exceptions to this rule exist, however, where a director or officer has engaged in fraud (*Polivka v. Worth Dairy, Inc.*), where the corporation is the alter ego of the director or officer (*People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 277 N.E.2d 844), or where the General Assembly has enacted a statutory exception to this rule such as that set forth in the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 452½) or in the Business Corporation Act (Ill. Rev. Stat. 1977, ch. 32, pars. 157.42—1, 157.42—2).

In determining whether section 26(c) should be viewed as such a statutory exception, we must consider the well-established rules of statutory construction. It is the primary rule of statutory construction that the intention of the legislature first must be ascertained and then given effect. (*Department of Public Works & Buildings v. Schon* (1969), 42 Ill. 2d 537, 250 N.E.2d 135; *Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73.) That intention may be gleaned from the language used in the statute. (*Department of Public Works & Buildings v. Schon; National Consolidated Industries, Ltd. v. Department of Insurance* (1979), 73 Ill. App. 3d 816, 392 N.E.2d 295.) As the court noted in *Schon*, the language employed by the legislature, "affords the best means of its exposition, and if ascertainable, will prevail without resorting to other aids for construction." (42 Ill. 2d 537, 539.) In ascertaining the meaning of a particular word, courts resort to its ordinary and popularly understood meaning, usually its dictionary meaning. (*Bowes v. City of Chicago* (1954), 3 Ill. 2d 175, 120 N.E.2d 15, *cert. denied* (1954), 348 U.S. 857, 99 L. Ed. 675, 75 S. Ct. 81; *Winfield Fire Protection District v. City of Wheaton* (1975), 29 Ill. App. 3d 630, 332 N.E.2d 43.) Courts also look at the entire statute to determine the legislature's intent in a particular provision. *Tri-County Landfill Co. v. Pollution Control Board* (1976), 41 Ill. App. 3d 249, 353 N.E.2d 316.

■ Contrary to the Board's contentions, the language of section 37—26(c) contains no reference to, nor does it explicitly require, the segregation of the unclaimed parimutuel ticket money. The Board asserts that the word "sum," used by the legislature in this section, refers to the establishment of a fund for the proceeds segregated from the assets of the

corporation. We disagree. A fund consists of money specifically set aside for some purpose (Webster's Third New International Dictionary 921 (1976) while a "sum" is defined as "an indefinite or specified amount of money" or "the aggregate of two or more * * * quantities * * * ." (Webster's Third New International Dictionary 2289 (1976).) In the face of these meanings, it cannot be concluded that these words are either synonymous or sufficiently similar that the legislature used the word "sum" rather than "fund" to indicate an intent to have a licensee segregate the parimutuel ticket money. Indeed, this conclusion is supported by the fact that the legislature used the word "fund" to state its intention that certain money should be held separately and segregated from other money of the licensee in section 29(b) of the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1977, ch. 8, par. 37—29(b)), which went into effect the same day as section 26(c). It is unlikely that the legislature would use the word "sum" in one section of the Illinois Horse Racing Act of 1975 to mean a fund and in another section explicitly use the word "fund" to convey the same intent.

The Board next contends that, as a corporation licensee can only operate through its directors and officers, to hold only the corporation liable for its failure to comply with section 37—26(c) renders that section ineffective where the corporation becomes insolvent. Admittedly, the General Assembly might have better guaranteed the effectiveness of this provision by adopting a statute which explicitly provides for officer or director liability or for the speedy payment of the unclaimed ticket money to the State. (E.g., Or. Rev. Stat. 1977, ch. 462, §462.073.) However, we may not rewrite the present legislation on review in order to avoid this consequence. (34 Ill. L. & Prac. *Statutes* §116 (1958).) In the present statute there is no language which evidences the legislature's intent to hold a director or officer personally liable for money due the State by his corporation under the Act. Furthermore, when the legislature has chosen to disregard the corporate structure and pierce the corporate veil, it has used very explicit language to do so such as the language found in the Retailers' Occupation Tax Act[1] (Ill. Rev. Stat. 1977, ch. 120, par. 452½).

■ The Board relies upon *Precision Extrusions, Inc. v. Stewart* (1962), 36 Ill. App. 2d 30, 183 N.E.2d 547, for the proposition that the defendant directors may be held personally liable for the acts of the corporation

---

[1] "§13½ [par. 452½]. Any officer or employee of any corporation subject to the provisions of this Act who has the control, supervision or responsibility of filing returns and making payment of the amount of tax herein imposed in accordance with Section 3 of this Act and who wilfully fails to file such return or to make such payment to the Department shall be personally liable for such amounts, including interest and penalties thereon, in the event that after proper proceedings for the collection of such amounts, as provided in said Act, such corporation is unable to pay such amounts to the department; and the personal liability of such officer or employee as provided herein shall survive the dissolution of the corporation."

absent explicit statutory language to that effect. *Precision Extrusions, Inc.*, involved a cause of action which alleged director liability for the breach of two statutory provisions. One specifically provided for director liability while the other was silent on that issue. In construing the latter statute, the court held that, where a director violates a statutory duty, it is not necessary that the statute specifically provide for the director's personal liability if at common law the director would have been liable. *Precision Extrusions, Inc.*, is distinguishable from the case at bar because no liability existed at common law for the directors under the present facts. It has long been accepted in Illinois that a director of a corporation is not responsible for mere errors in judgment as long as the corporation is managed honestly and in good faith. (*Shlensky v. Wrigley* (1968), 95 Ill. App. 2d 173, 237 N.E.2d 776; *Precision Extrusions, Inc. v. Stewart; Gubbins v. Bank of Commerce* (1898), 79 Ill. App. 150.) As the Board failed to allege misappropriation of corporate assets or fraud by the directors, the directors at most were guilty of errors in judgment for which they could not be held personally liable. Accordingly, we do not find that the Board has stated a cause of action against the defendant directors based on section 26(c).

■ We turn next to the Board's allegations that count II of its first amended complaint states a valid cause of action based on the defendant directors' negligent mismanagement of the three defendant corporations and on the breach of their duty as trustees of the money to be paid into the Fund under section 26(c). In determining whether the Board has stated a valid cause of action, we are directed by the Board to the familiar principles surrounding motions to dismiss. We do not refute the Board's contentions that pleadings should be liberally construed or that a motion to dismiss admits all well-pleaded facts and the reasonable inferences therefrom. In its brief the Board states that:

> " * * * the amended complaint is sufficient as it alleges a duty on the part of the individual directors, a breach of that duty, and that the loss suffered by plaintiff is the result of the defendant directors' breach of their duty."

We do not agree. Despite the liberality used in the construction of pleadings, it is paramount that a pleading contain such information as reasonably informs the opposite party of the nature of the claim. (*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326.) The cases relied upon by the Board all state with some particularity the exact acts alleged to be the substance of the claim. However, the Board only states that the directors "breached their duty of proper management by negligently mismanaging the corporations in such manner that the corporations became insolvent" and that they "breached their duty as trustees by failing to adequately protect the monies to be paid into the

aforesaid Fund." These were not specific allegations of fact. Rather, the Board's allegations are mere conclusions of the pleader and as such are not admitted in a motion to dismiss. (Ill. Rev. Stat. 1977, ch. 110, par. 33; *Pierce v. Carpentier* (1960), 20 Ill. 2d 526, 169 N.E.2d 747; *Hancock v. Luetgert* (1976), 40 Ill. App. 3d 808, 353 N.E.2d 165.) The Board alleges no facts from which the defendant directors may be apprised of the exact acts alleged to give rise to the action. (*First National Bank v. City of Aurora.*) The trial court allowed the Board leave to file its first amended complaint in order to remedy this problem. As the Board failed to remedy this deficiency in the amended complaint, we find that the trial court properly dismissed the amended complaint. In light of our conclusion that the Board's pleading was deficient, we find it unnecessary to consider the Board's other contentions.

For the aforesaid reasons the order of the circuit court of Cook County dismissing count II of the first amended complaint for failing to state a cause of action is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.