[Cite as *State v. Burey*, 2021-Ohio-943.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                             No. 109629

    v.                               :

DANIEL BUREY,                           :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 25, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-637858-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Karen Greene, Assistant Prosecuting Attorney, *for appellee.*

Ruth R. Fischbein-Cohen, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Daniel Burey, appeals his convictions for theft and telecommunications fraud. Finding no merit to the appeal, we affirm.

{¶ 2} In April 2019, Burey was named in a two-count indictment charging him with two fifth-degree felonies — theft, a violation of R.C. 2913.02(A)(3), and

telecommunications fraud, a violation of R.C. 2913.05. Following discovery and extensive pretrials, a jury considered the following testimony and evidence at trial.

{¶ 3} In March 2019, Burey and the victim, Dewey Lewis, were both residents at the Pavilion Nursing Home. Lewis, age 68, had undergone amputation surgery and was living at Pavilion during his recovery. After dinner on March 1, 2019, Burey asked Lewis if he could borrow his cell phone to make a phone call. Lewis testified that although he really did not know Burey and had never let anyone else borrow his phone, he agreed to let Burey use it. After some time, Lewis asked for his phone back because he needed to call his wife — a call he made daily, usually around 11:00 p.m.

{¶ 4} Lewis testified that he customarily checks his bank account on the day that his social security check is deposited because he used the money to pay bills, which he does from his phone. Around 1:00 a.m., he called his bank and discovered that not only was his check deposited, but also that his account was missing hundreds of dollars. The telephone automated banking service revealed recent multiple transactions that Lewis did not authorize. Realizing that Burey was the only person to use his phone during that time, he confronted Burey. During the confrontation, Burey told Lewis to give him his phone and that he could get the charges taken off or transferred to Burey's credit card. Lewis testified that he did not trust Burey and refused to hand over his phone. At no time during this conversation did Burey offer to repay Lewis the money. The next day, Lewis and Burey had another conversation about the unauthorized charges. Again, Burey did

not offer to repay Lewis, and after Lewis denied Burey's request to use his phone again to allegedly "take off" the charges, Burey told Lewis, "old man, you're not going to do a damn thing about it." (Tr. 220.)

{¶ 5} The next day, the director of the facility contacted the police. Officer Christopher Johnson arrived and spoke with Lewis. During the conversation, Officer Johnson was able to access an online gaming application that Burey had downloaded onto Lewis's phone. Officer Johnson discovered 13 purchases made through the gaming application, totaling $459.87, and that Burey linked his Facebook account to the game. Officer Johnson took screenshot photographs of Lewis's phone showing gaming and confirmation-of-purchase messages over the time period that Burey possessed Lewis's phone.[1] Additionally, Officer Johnson accessed Lewis's bank account information and compared the debits and pending transactions in Lewis's account with those charges depicted in the gaming app. The purchases and bank transactions matched. Lewis testified that he did not authorize Burey to download any apps onto his phone or make any charges against his debit card.

{¶ 6} Officer Johnson testified that he spoke to Burey and video recorded the conversation. The jury viewed a portion of the conversation in which Burey admitted that he used Lewis's phone, downloaded the gaming app on Lewis's phone,

---

[1] The photographs also showed four other in-app purchases made earlier that day, and three purchases made the day before.

and made the purchases. Although Burey offered to pay Lewis back, he was unable to explain how he could do so considering he had no income.

{¶ 7} The jury found Burey guilty of both theft and telecommunications fraud as charged. The trial court found that the offenses did not merge, imposed a prison sentence of 12 months on both offenses, and ordered the sentences to run consecutively for a total sentence of 24 months.

{¶ 8} Burey now appeals, raising four assignments of error.

## I. Proof Beyond a Reasonable Doubt

{¶ 9} In his first assignment of error, Burey contends that "the jury's finding of guilt was not supported by proof beyond a reasonable doubt." Within this assignment of error, Burey raises a hodgepodge of arguments – (1) failure to prove that he acted purposely; (2) imposition of a maximum sentence; and (3) that the prosecutor engaged in misconduct. All three issues are without merit.

{¶ 10} Burey first contends that the definition of "proof beyond a reasonable doubt" "was not taken seriously" because "many important facts were left out of the equation in arriving at the decision." Despite this argument, Burey fails to identify what facts the jury did not consider or what facts prove that the jury did not fulfill its duty. He contends that the state deliberately withheld from the jury that Burey made a mistake and attempted to fix the mistake by transferring the charges to his credit card, but that Lewis refused to allow Burey to do so. This contention is belied by the record because the jury heard testimony that Burey made an effort "to correct the problem." (Tr. 285.)

{¶ 11} He also contends that the state failed to prove that he acted "purposely." He maintains that his conduct was merely a mistake that he attempted to fix, but Lewis would not allow him to do so. Both R.C. 2913.02(A)(3), theft by deception, and R.C. 2913.05(A), telecommunications fraud, require that the defendant act knowingly and with purpose. In this case, the evidence presented at trial demonstrated that Burey used Lewis's cell phone beyond the scope of consent by downloading a game app on Lewis's phone. Additionally, Burey made over $450 of unauthorized in-app purchases with Lewis's debit card. Even if the first transaction was a mistake, as Burey contends, it was reasonable for the jury to believe that the other 12 purchases were deliberate. Burey's attempt to "fix his mistake" after he was caught does not demonstrate that he did not act purposely when he used Lewis's phone beyond the consent given and made charges against Lewis's debit card. Accordingly, viewing the evidence in the light most favorable to the state, the state provided sufficient evidence for the jury to conclude beyond a reasonable doubt that Bury acted knowingly and with purpose in committing both theft and telecommunications fraud.

{¶ 12} Under this assignment of error, Burey also challenges the trial court's imposition of a maximum sentence, contending that it did not comport with the purposes and principles of felony sentencing under R.C. 2929.11, and that the trial court did not consider the seriousness and recidivism factors under R.C. 2929.12. In support, Burey contends that Lewis allowed him to use his phone — he did not use it without permission. He claims that he mistakenly charged Lewis's debit card

and attempted to correct his mistake, but "[Lewis] refused to allow [him] to repair the problem." Burey's attempt to blame Lewis, the victim, or somehow argue that Lewis is at fault, is not an appropriate argument on appeal in challenging his sentence. And the request for this court to vacate, modify, or decrease his sentence under R.C. 2953.08(G)(2) based on these arguments is unsupported by the record and the arguments raised herein.

{¶ 13} Burey's final contention under this assignment of error is that the prosecutor engaged in misconduct by "inviting error" and deliberately withholding from the jury that Burey's conduct was merely a mistake, which he attempted to remedy. The doctrine of "invited error" provides that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Smith v. O'Connor*, 71 Ohio St.3d 660, 663, 646 N.E.2d 1115 (1995). Our review of the record reveals that these allegations are completely unfounded, and the doctrine of invited error has no application in this assignment of error.

{¶ 14} Accordingly, the first assignment of error is overruled.

## II. Merger

{¶ 15} In his second assignment of error, Burey contends that the trial court erred by failing to merge the two counts during sentencing. The record reflects that the trial court concluded that the theft and telecommunications fraud offenses were not allied, and denied Burey's request to merge the offenses for sentencing. (Tr. 408-410.)

{¶ 16} The allied offenses statute, R.C. 2941.25, codifies Ohio's double jeopardy protections regarding when multiple punishments may be imposed. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 12. Under the statute, where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one offense. A defendant charged with multiple offenses may be convicted of all the offenses, however, if (1) the defendant's conduct constitutes offenses of dissimilar import; i.e., each offense caused separate, identifiable harm; (2) the offenses were committed separately; or (3) the offenses were committed with separate animus or motivation. R.C. 2941.25(B); *Ruff* at ¶ 14. Thus, to determine whether offenses are allied, courts must consider the defendant's conduct, the animus, and the import. *Id.* at paragraph one of the syllabus.

{¶ 17} An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

{¶ 18} Burey contends that the offenses are allied because he had permission to use Lewis's phone. According to Burey, this permission negated any theft of the phone and because the phone "is made with features as to its use," there is no

telecommunications fraud. His arguments are not persuasive. Accordingly, Burey has failed to withstand his burden on appeal in demonstrating that the offenses are allied.

{¶ 19} Notwithstanding Burey's failure, we find that the offenses are not allied offenses. We agree that Burey had permission to use Lewis's phone to make a phone call. He did not, however, have permission to download a gaming application on the phone and then make in-app purchases by charging them against Lewis's debit card. Burey's separate conduct of downloading the gaming application and repeatedly making charges against Lewis's debit card were committed separately, with a separate animus, and caused separate identifiable harm. Burey's purposeful and knowing actions of making 13 separate charges totaling over $459.87, over the course of three hours, demonstrates that Burey's conduct was a scheme that was beyond a mere mistake.

{¶ 20} Accordingly, the third assignment of error is overruled.

## III. Violation of Due Process

{¶ 21} Burey contends in his third assignment of error that he was deprived of his due process right to a fair trial as guaranteed by the United States Constitution. He makes this contention without any supporting argument regarding how his due process rights were violated, and without any identification to the record where any such violation occurred.

{¶ 22} App.R. 16(A)(7) requires an appellant to assert "[a]n argument containing the contentions of the appellant with respect to each assignment of error

presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  This court may disregard any assignment of error where an appellant fails to support his or her argument with citation as required by App.R. 16(A).  App.R. 12(A)(2).

{¶ 23} Accordingly, because Burey has not complied with App.R. 12 and 16, this court summarily overrules this assignment of error.

## IV.  Manifest Weight of the Evidence

{¶ 24} Burey contends in his fourth assignment of error that his convictions are against the manifest weight of the evidence.

{¶ 25} The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' * * *, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.'"  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), paragraph two of the syllabus.

{¶ 26} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief."  *Eastley* at ¶ 12, quoting *Thompkins* at 387.  In a manifest weight analysis, this court sits as a "thirteenth juror," and reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins* at 386.

{¶ 27} Burey contends that his convictions are against the manifest weight of the evidence because the evidence revealed that he did not intend to commit any crime because he made the charges on Lewis's phone by mistake. In support, he directs this court to testimony where he offered to remedy the mistake by transferring the charges to his own phone or credit card but Lewis refused to allow him to do so. According to Burey, Lewis's refusal amounted to "invited error."

{¶ 28} As already discussed, the doctrine of "invited error" provides that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *O'Connor*, 71 Ohio St.3d at 663, 646 N.E.2d 1115. Again, we fail to understand how the doctrine of invited error applies here. Burey's argument is without merit.

{¶ 29} Rather, we find that this is not the exceptional case where the evidence weighs heavily against the conviction. The fact that Lewis refused to give Burey his cell phone again to "fix" the so-called mistake is not grounds for this court to reverse on manifest weight grounds. Our review of the record demonstrates that the jury did not lose its way nor create such a manifest miscarriage of justice that Burey's convictions must be reversed and a new trial ordered. Additionally, we decline to

grant Burey's request to modify his conviction to a misdemeanor because there is no basis to do so.

**{¶ 30}** Burey's fourth assignment of error is overruled.

**{¶ 31}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
MARY EILEEN KILBANE, J., CONCUR