[Cite as *State v. Hawkins*, 2022-Ohio-4288.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                                       No. 111519

v.                                       :

SEDRICK HAWKINS,                         :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 1, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-653970-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Chadwick P. Cleveland, Assistant Prosecuting Attorney, *for appellee.*

Flowers & Grube, Louis E. Grube, and Melissa A. Ghrist, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Sedrick Hawkins appeals his convictions after he pled guilty to one count of murder and one count of aggravated burglary. He contends that the offenses were allied offenses of similar import and that the trial

court plainly erred in failing to merge the offenses for sentencing. Hawkins also contends that the trial court erred in sentencing him to an indefinite sentence, pursuant to the Reagan Tokes Law, on the aggravated burglary count. Hawkins asserts that the indefinite sentencing provisions of the Reagan Tokes Law are unconstitutional because they violate state and federal rights to a trial by jury, state and federal rights to due process and the separation-of-powers doctrine. For the reasons that follow, we affirm.

**Factual Background and Procedural History**

{¶ 2} On October 26, 2020, a Cuyahoga County Grand Jury indicted Hawkins on four counts: one count of aggravated murder, an unclassified felony, in violation of R.C. 2903.01(B) (Count 1); one count of murder, an unclassified felony, in violation of R.C. 2903.02(B), with "felonious assault and/or aggravated burglary" as the underlying predicate offense(s) (Count 2); one count of felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(1) (Count 3) and one count of aggravated burglary, a first-degree felony, in violation of R.C. 2911.11(A)(1) (Count 4). The charges relate to a September 16, 2019 incident in which Hawkins allegedly trespassed on property owned by Larry Manno and then physically assaulted Manno, causing his death. Hawkins initially pled not guilty to all charges.

{¶ 3} The parties reached a plea agreement. On March 30, 2022, Hawkins pled guilty to Count 2 and Count 4 as charged and the remaining counts were nolled. Hawkins was referred for a presentence-investigation report ("PSI") prior to sentencing.

**{¶ 4}** On April 27, 2022, the trial court conducted the sentencing hearing. The trial court sentenced Hawkins to 15 years to life on the murder count (Count 2). In accordance with the Reagan Tokes Law, the trial court sentenced Hawkins to a minimum term of eight years and a maximum term of 12 years on the aggravated burglary count (Count 4), to be served concurrently with the sentence on the murder count. The trial court notified Hawkins that he would be subject to a mandatory two-to-five-year term of postrelease control on the aggravated burglary count, advised him regarding his duty to register as a violent offender and ordered him to pay $19,188.36 in restitution for Manno's medical and funeral expenses.

**{¶ 5}** Hawkins objected to the constitutionality of the Reagan Tokes Law's indefinite sentencing provisions. He did not otherwise object to his sentences.

**{¶ 6}** Hawkins appealed, raising the following four assignments of error for review:

> Assignment of Error I: The trial court committed plain error by failing to merge all of the defendant's convictions at sentencing.

> Assignment of Error II: The trial court erred by sentencing the defendant pursuant to the Reagan Tokes Law, which violates the state and federal rights to a jury trial.

> Assignment of Error III: The trial court erred by sentencing the defendant pursuant to the Reagan Tokes Law, which violates the state and federal guarantees of due process.

> Assignment of Error IV: The trial court erred by sentencing the defendant pursuant to the Reagan Tokes Law, which violates the constitutional separation of powers.

**Law and Analysis**

**Allied Offenses**

{¶ 7} In his first assignment of error, Hawkins argues that the aggravated burglary and murder offenses of which he was convicted are allied offenses of similar import and should have been merged for sentencing. R.C. 2941.25, Ohio's allied-offenses statute, states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 8} In determining whether offenses are subject to merger for sentencing under R.C. 2941.25, courts evaluate three separate factors — the import, the conduct and the animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraphs one and three of the syllabus. Offenses do not merge, and a defendant may be convicted of and sentenced for multiple offenses if any one of the following is true: (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately or (3) the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, ¶ 25, 31. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Washington*, 137

Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18; *see also State v. Davids*, 8th Dist. Cuyahoga No. 110890, 2022-Ohio-2272, ¶ 43; *State v. Burey*, 8th Dist. Cuyahoga No. 109629, 2021-Ohio-943, ¶ 17.

{¶ 9} Offenses are dissimilar in import or significance within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23. Thus, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* at ¶ 26. "The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Id.*

{¶ 10} Offenses are committed separately within the meaning of R.C. 2941.25(B) if "'one offense was complete before the other offense occurred, * * * notwithstanding their proximity in time and that one [offense] was committed in order to commit the other.'" *State v. Woodard*, 2d Dist. Montgomery No. 29110, 2022-Ohio-3081, ¶ 38, quoting *State v. Turner*, 2d Dist. Montgomery No. 24421, 2011-Ohio-6714, ¶ 24. Thus, "'when one offense is completed prior to the completion of another offense during the defendant's course of conduct, those offenses are separate acts.'" *Woodard* at ¶ 38, quoting *State v. Mooty*, 2014-Ohio-733, 9 N.E.3d 443, ¶ 49 (2d Dist.).

{¶ 11} For purposes of R.C. 2941.25(B), animus has been defined as "'"purpose or more properly, immediate motive."'" *State v. Priest*, 8th Dist.

Cuyahoga No. 106947, 2018-Ohio-5355, ¶ 12, quoting *State v. Bailey*, 8th Dist. Cuyahoga No. 100993, 2014-Ohio-4684, ¶ 34, quoting *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). "'If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses.'" *State v. Lane*, 12th Dist. Butler No. CA2013-05-074, 2014-Ohio-562, ¶ 12, quoting *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 13,

{¶ 12} Hawkins acknowledges that he did not raise the issue of merger or otherwise object to the trial court's decision to impose sentences on both the murder and aggravated burglary counts below. Accordingly, he has forfeited all but plain error. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3, 21; *State v. Pugh*, 8th Dist. Cuyahoga No. 111099, 2022-Ohio-3038, ¶ 20.

{¶ 13} Appellate courts have discretion to correct plain errors, i.e., "'a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings,'" that has affected a substantial right, i.e., that "'affected the outcome of the trial.'" *Rogers* at ¶ 22-23, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); Crim.R. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Thus, reversal for plain error requires a showing that there was an error, that the error was plain or obvious, that the error affected the outcome of the proceeding and that

reversal is necessary to correct a manifest miscarriage of justice. *State v. Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, ¶ 7, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. The party asserting plain error "bears the burden of proof to demonstrate plain error on the record." *Rogers* at ¶ 22, citing *Quarterman* at ¶ 16.

{¶ 14} Thus, to prevail on his claim of plain error, Hawkins must demonstrate, based on the record before us, "a reasonable probability" that he has, in fact, been convicted of "allied offenses of similar import committed with the same conduct and with the same animus." *Rogers* at ¶ 3. Absent such a showing, he "cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.* at ¶ 3, 29; *see also Pugh* at ¶ 20, 23.

{¶ 15} Hawkins was convicted of murder in violation of R.C. 2903.02(B), which provides: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of [R.C.] 2903.03 or 2903.04." The predicate offenses underlying this conviction were "felonious assault and/or aggravated burglary."

{¶ 16} Hawkins was also convicted of aggravated burglary in violation of R.C. 2911.11(A)(1), which provides: "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of

the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another."

{¶ 17} Hawkins argues that the murder and aggravated burglary offenses in this case fail all three parts of the *Ruff* test and should have, therefore, been merged for sentencing. Hawkins asserts, with respect to the first part of the *Ruff* test — dissimilar import — that "[t]he record does not reflect that Defendant Hawkins' offenses * * * caused separate, identifiable harm" and that "the harm caused by the aggravated burglary is the same harm caused by the charge of felony murder premised upon that aggravated burglary: Manno sustained serious injuries to which he later succumbed." With respect to the second part of the *Ruff* test — conduct committed separately — Hawkins asserts that because the offenses were "committed against the same victim in the same location at the same time" and were part of the same "course of conduct," it could not "reasonably be argued" that the offenses were committed "separately." Finally, with respect to the third part of the *Ruff* test — separate animus — Hawkins asserts that the facts presented at the sentencing hearing showed that there was a "singular motivation" for Hawkins' actions, i.e., "to collect money" that Hawkins believed he was owed for performing various odd jobs for Manno, and that "[w]ith no evidence of any second motivation or animus presented by the State, it cannot be concluded that the offenses were committed with separate animus or motivation."

{¶ 18} The state argues that "the facts do not support merger of the felony murder and aggravated burglary counts" because (1) Hawkins' murder conviction was not predicated solely on aggravated burglary but was predicated on "either aggravated burglary or felonious assault" and (2) the aggravated burglary was completed before the murder. The state argues that the existence of Hawkins' DNA on a serrated knife "left on top of one of the business' rummaged-through desks" supports the conclusion that Hawkins used the knife to threaten Manno after Hawkins entered the premises but before he struck Manno on the head, knocked Manno to the ground and "stomp[ed] Manno to death on the cement garage floor." The state further argues that the threat with the knife and the "strike to the head" were "distinct" from the "subsequent stomping of Manno * * * that resulted in serious physical harm" and that because Hawkins "completed" the aggravated burglary prior to "stomping Manno to death" — e.g., after threatening Manno with the knife or after striking Manno in the head — the offenses were committed separately, based on separate acts.

{¶ 19} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct" and "an offense may be committed in a variety of ways." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 26, 30. "[T]his analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct — an inherently subjective determination." *Ruff* at ¶ 32,

quoting *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52 (plurality opinion per Brown, C.J.).

{¶ 20} There are limited facts in the record regarding the conduct that led to Hawkins' convictions in this case. The Cleveland Police Department's Case Information Form, which is part of the record in this case, states:

> Details of Arrest
> On or about 9/16/19 in the City of Cleveland @12808 Buckeye Road the suspect Sedrick Hawkins did trespass at the elderly victim Larry Manno's[s] business. The suspect beat and robbed the victim. The victim was transport[ed] to the hospital and eventually died from his injuries.

> Details of Offense
> On 9/16/19 @12808 Buckeye Rd the suspect Sedrick Hawkins beat the victim. The victim was transport[ed] to the hospital and later died.

{¶ 21} The state's bill of particulars merely restates the broad, general language of the indictment:

> Count 2: Murder, 2903.02(B)

> That on or about September 16, 2019, and at the location of 12808 Buckeye Road, Cleveland, OH 44120, the Defendant, Sedrick Hawkins, did cause the death of Larry Manno, as a proximate result of the offender committing or attempting to commit an offense of violence that is a felony of the first or second degree, to wit: Aggravated Burglary and/or Felonious Assault, in violation of Section 2903.02 of the Revised Code contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

> * * *

> Count 4: Aggravated Burglary, 2911.11(A)(1)

> That on or about September 16, 2019, and at the location of 12808 Buckeye Road, Cleveland, OH 44120, the Defendant, Sedrick Hawkins, did, by force, stealth, or deception, trespass, as defined in section

2911.21(A)(1) of the Revised Code, in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when Larry Manno, a person other than the accomplice, was present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure a criminal offense, to wit: Felonious Assault, 2903.11, and the offender recklessly inflicted, or attempted or threatened to inflict physical harm on Larry Manno contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

{¶ 22} The PSI likewise contains limited facts regarding the incident:

<u>Offense Summary</u>
The following synopsis was obtained from Cleveland Police Department records.

On 09-16-2019, officers responded to Manno Landscaping located at 12808 Buckeye Road in connection with an assault.

Upon arrival, officers observed the victim, Larry Manno, laying on the shop floor of the business, next to a pool of his own blood. The victim had a medium size laceration on the top of his head, and his pockets were pulled out of his pants. EMS was contacted and the victim was transported to University Hospital.

Officers spoke to the reporting person who stated that she found the victim at approximately 1240 hours, after returning from running errands. The reporting person stated that when she walked into the shop she saw an unknown male behind the desk of the shop. The male came from around the desk and ran out of the front door of the business. The reporting person advised that she noticed numerous items in the shop [were] disheveled. The reporting person then observed the victim lying on the floor of the garage area of the shop.

On 10-11-2019, the victim succumbed to his injuries and was pronounced dead at University Hospital. The Cuyahoga County Medical Examiner listed the cause of death as Bronchopneumonia due to recent blunt force injuries of head and chest with skeletal injuries.

After a thorough and extensive investigation by the Cleveland Police Department Homicide Unit it was determined that Sedrick Hawkins, later named the defendant[,] caused the death of the victim. On 12-3-

2019, investigators received a positive DNA hit from the Cuyahoga County Regional Forensic Science Laboratory for the defendant.

**{¶ 23}** In its sentencing memorandum, the state addressed the issue of merger of the offenses and argued that the offenses did not merge for sentencing based on the following summary of the facts:

> The underlying incident occurred at Manno's Landscaping, 12808 Buckeye Road, Cleveland, Cuyahoga County, Ohio at approximately 12:40PM on September 16, 2019. Around the time of the assault, Mr. Manno and his staff were working to wind down the business, which had been a decades-long Buckeye-Shaker neighborhood fixture. Detectives were able to locate surveillance footage showing Defendant purchasing a Mike's Hard Lemonade beverage from a nearby gas station shortly before the assault. A witness saw Defendant and Mr. Manno speaking outside the business at approximately 12:15PM. Defendant then entered the business, first setting his open and partially consumed Mike's Hard Lemonade (still in its plastic bag from the purchase) down in the threshold of the entryway.

> The business's bookkeeper/administrative assistant, Ms. Sevcik, returned to the business around 12:40PM. She found Mr. Manno lying on the floor of the business with an open head wound and what she identified as bootprints/shoeprints on the rear and side of his white undershirt. Ms. Sevcik also observed that both of Mr. Manno's pants pockets had been turned inside out. Ms. Sevcik heard rummaging in another portion of the business and then observed Defendant. She asked Defendant what was going on and Defendant stated "I don't know what's going on" before fleeing from the business. Cleveland Police and EMS arrived and began to render aid to Mr. Manno prior to transporting him to University Hospitals.

> Mr. Manno sustained multiple fractured ribs on the right side, right side pulmonary contusion, right lung hemopneumothorax, sternal fracture with mediastinal hematoma, left rib fracture, and a laceration to his scalp. Mr. Manno never recovered from his injuries, developing pneumonia, sepsis/septic shock, and acute respiratory failure. Mr. Manno died from his injuries on October 11, 2019. The Cuyahoga County Medical Examiner determined Mr. Manno's death to be a homicide incurred while at work, underlying cause

bronchopneumonia due to recent blunt force injuries of head and chest with skeletal injuries.

Defendant's DNA was located on both the Mike's Hard Lemonade can and a knife found by Cleveland Police on a desk inside the business. Defendant identified himself on the gas station surveillance purchasing the Mike's Hard Lemonade, admitted to knowing Mr. Manno from the neighborhood, but told homicide detectives that he had never stepped foot inside the business. Defendant's appearance and clothing the day of the homicide was consistent with Ms. Sevcik's initial report to the police.

The State submits that Defendant's Murder and Aggravated Burglary convictions do not merge for sentencing purposes. * * * As such, this Court may properly impose consecutive sentences for Defendant's conduct. Defendant left his Mike's Hard Lemonade can at the threshold of the business' front door, the State believes because Defendant knew that he needed both hands free when he confronted Mr. Manno inside the business. Further, the repeated stomps/shoe prints found on Mr. Manno's back and side were not injuries intended to gain Mr. Manno's compliance. The State submits that the stomps had to have been inflicted while Mr. Manno was already on the floor (likely after sustaining the head injury) and could have been inflicted either before or after Defendant turned out Manno's pants pockets.

{¶ 24} At the sentencing hearing, Hawkins' counsel did not challenge the state's version of events and did not raise the issue of merger of the offenses. She described the circumstances that led to the incident (and Manno's death) in very general terms, without any detail as to what occurred after Hawkins entered the premises:

[Hawkins] has shared with [defense counsel] the circumstances which gave rise to this. As I stated before, he had been working on his own. In this particular situation, he had been working odd jobs. He had been working daily, but working odd jobs.

On one occasion Mr. Manno, I think out of the goodness of his heart, hired my client to do odd jobs around his facility. My client several days later came to collect money for those odd jobs.

I think potentially because Mr. Manno may have been suffering from dementia, he did not recall hiring my client to do this work. My client was angry, because he felt that he was entitled to payment for the odd jobs.

A struggle ensued and unfortunately Mr. Manno was injured to the point where he subsequently succumbed to his injuries.

{¶ 25} Contrary to Hawkins' assertion, it was not the state's burden to present "evidence" below establishing that the murder and aggravated burglary offenses to which Hawkins pled guilty were not allied offenses of similar import; if Hawkins believed the offenses to which he had pled guilty should have merged for sentencing, it was his burden to present facts below demonstrating that the offenses were allied offenses of similar import. *See Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, at ¶ 18; *Davids*, 2022-Ohio-2272, at ¶ 43; *Burey*, 2021-Ohio-943, at ¶ 17.

{¶ 26} Further, it is Hawkins' burden to establish plain error based on the record here. As this court previously cautioned, when addressing a similar plain error challenge in *Pugh*, 2022-Ohio-3038:

> The defendant's "burden of proving entitlement to relief for plain error 'should not be too easy.'" *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 22, quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (construing Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B)). Even if the defendant's burden is satisfied, the Supreme Court of Ohio has admonished appellate courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." (Emphasis sic; internal quotations omitted.) *Rogers* at ¶ 23, quoting [*Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240], in turn quoting *Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus. Therefore, an appellate court may

not simply substitute its judgment for that of a trial court under the guise of plain error, which affords limited power. An appellate court must be careful not to engage in an unwarranted expansion of Crim.R. 52(B). *See* [*State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 9, 20]. Even when claims of serious error are made, when no objection was raised at trial, expanding Crim.R. 52(B) "would skew the Rule's careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." (Internal quotations omitted.) *State v. Hill*, 92 Ohio St.3d 191, 199, 749 N.E.2d 274 (2001), quoting *Johnson v. United States*, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (further citations omitted.) "[O]ur holdings should foster rather than thwart judicial economy by providing incentives * * * for the defendant to raise all errors in the trial court—where, in many cases, such errors can be easily corrected." *Perry* at ¶ 23.

*Pugh* at ¶ 21.

{¶ 27} In support of his argument that the murder and aggravated burglary offenses of which Hawkins was convicted should have been merged for sentencing, Hawkins cites *State v. Ramey*, 2d Dist. Montgomery No. 27636, 2018-Ohio-3072, *State v. Robinson*, 1st Dist. Hamilton No. C-170147, 2019-Ohio-387, and *State v. Seymore*, 12th Dist. Butler No. CA2021-09-113, 2022-Ohio-2180. Hawkins argues that here, as in those cases, "a single violent act served as the basis for both charges," i.e., that the conduct that caused Manno's death for purpose of the murder offense was the same conduct that served as the aggravating element in the aggravating burglary offense, and, therefore, the offenses should have merged for sentencing.

{¶ 28} In *Ramey*, the defendant left and entered a friend's home through an unlocked door, seeking money that he thought his friend may have taken from him. *Ramey* at ¶ 5. A physical altercation ensued in which the defendant strangled and

killed his friend. *Id.* A jury found the defendant guilty of murder and aggravated burglary, among other offenses, and the defendant was sentenced separately on those two counts. *Id.* at ¶ 8. On appeal, the defendant argued that the murder and aggravated burglary offenses should have been merged for sentencing "because they share the underlying element of felonious assault." *Id.* at ¶ 10-11. The Second District agreed, concluding that the defendant's conduct constituting the offense of murder "caused a harm that is not separate and identifiable from the harm caused by the aggravating element" of the aggravated burglary offense. *Id.* at ¶ 21. The court explained:

> [T]he murder as a proximate cause of felonious assault is the aggravating element necessary to make the burglary an aggravated burglary rather than a simple burglary. Without the physical harm caused by the felonious assault, the burglary would not have had the aggravating element of inflicting physical harm. Accordingly, we conclude that the trial court erred by failing to merge the offense of aggravated burglary with the offense of murder as a proximate cause of felonious assault.

*Id.*

{¶ 29} In *Robinson*, the defendant went to the victims' house to purchase marijuana. The two victims escorted the defendant inside, a physical altercation ensued and the defendant killed one of the victims and seriously injured the other. *Id.* at ¶ 4-5. A jury found the defendant guilty of ten charges, including one count of felony murder and multiple counts of aggravated burglary. *Robinson* at ¶ 28. The First District held that, with respect to the victim who died, the defendant's convictions for felony murder and aggravated burglary should have merged, explaining as follows:

> The conduct that constituted the felonious assault of [that victim] and resulted in his death was not separate and identifiable from the harm caused by the felonious assault that served as the predicate offense for felony murder and the aggravating elements of * * * aggravated burglary. Further, the evidence demonstrated that these offenses were neither committed separately nor with a separate animus. [The victim] was shot one time. That conduct was the sole basis for the felonious-assault charge as well as the sole element of physical harm that was the predicate offense for the felony-murder count and the aggravating factor for the aggravated-robbery and aggravated-burglary counts. The trial court should have found that all of these offenses were subject to merger, and erred to the extent that it did not.

*Id.* at ¶ 59.

{¶ 30} In *Seymore*, 2022-Ohio-2180, the defendant pled guilty to one count of burglary and one count of aggravated assault. *Id.* at ¶ 2, 17-18. After the defendant had entered the victim's home to gather his personal belongings, the defendant and victim began to argue and fight. *Id.* at ¶ 2, 19-21. The court concluded that "[a]lthough [the defendant] was initially permitted to be inside the victim's home, his privilege to remain there was revoked and he became a trespasser" when he began assaulting her. *Id.* at ¶ 23. The court found that the burglary was committed when the defendant "knowingly remained in the victim's home without privilege to do so and by force by shoving [a] firearm into the victim's mouth and threatening her" and that the aggravated assault was committed when the defendant "knowingly caused or attempted to cause physical harm to the victim by means of a deadly weapon by shoving [a] firearm into the victim's mouth and threatening her." *Id.* Given that "both offenses were based upon [the defendant's] conduct inside the victim's home when he shoved a firearm into her mouth and threatened her," the

court found that the offenses were allied offenses of similar import and that they should have been merged by the trial court at sentencing. *Id.* at ¶ 23-24.

{¶ 31} Those cases are distinguishable from this case. Each of those cases had something that this case does not: specific facts in the record supporting the defendant's allied-offense claim. In *Ramey* and *Robinson*, the defendants were convicted and sentenced following jury trials, at which detailed evidence was presented. In *Seymore*, both the defendant's version of events and the victim's version of events were detailed in the PSI. *See Seymore* at ¶ 19-25 (noting that the PSI contained "sufficient facts for us to conduct the merger analysis"). Further, *Ramey* and *Robinson* were not plain error cases, and *Seymour* involved offenses and facts different from those at issue here.

{¶ 32} Hawkins argues that "the trespass that set into motion the aggravated burglary charge" in this case "began only at the same time as the fight" and that because "the fight * * * was the starting point of the aggravated burglary and the murder, * * * this single course of conduct was the basis for both offenses." Hawkins, however, points to nothing in the record supporting this version of the facts. *See* App.R. 12(A)(2), 16(A)(7).

{¶ 33} In this case, Hawkins did not offer his version of the events below — at least not in any detail. Based on the offenses charged, the underlying offense for purposes of the murder conviction could have been felonious assault or aggravated burglary and the aggravating element for purposes of the aggravated burglary offense could have been the infliction of physical harm, the attempted infliction of

physical harm or the threat to inflict physical harm. *See* R.C. 2911.11(A)(1). We believe the state's recitation of the facts, as set forth in its sentencing memorandum, could support the imposition of separate sentences based on separate conduct — if not separate and identifiable harm. *See, e.g., State v. McFarland*, 8th Dist. Cuyahoga No. 105570, 2018-Ohio-2067, ¶ 47 ("aggravated burglary occurred when the defendants entered the apartment complex with the intent to harm" the victim and was "a separate act from the shooting" of the victim); *cf. State v. Armstead-Williams*, 11th Dist. Portage No. 2016-P-0007, 2017-Ohio-5643, ¶ 35 ("Under R.C. 2911.11(A)(1), the aggravated burglary was completed when appellant trespassed into [victim's]] apartment by force with purpose to commit theft * * * and *threatened* to harm him. * * * [T]he aggravated robbery was completed when, in committing the theft, appellant *inflicted serious physical harm on [victim]* by beating him in the head with his gun. Since the aggravated burglary was complete when appellant threatened to harm [victim], appellant's subsequent act of pistol-whipping him was unnecessary to complete aggravated burglary"); *see also State v. Rucker*, 2020-Ohio-2715, 154 N.E.3d 350, ¶ 24 (8th Dist.) ("[T]he focus of allied offense inquiries is on the offender's conduct that constitutes the commission of the offense, not upon the temporally related course of conduct or same acts or transactions analysis or the act being considered as one continuous act. We cannot read the latter propositions into R.C. 2941.25 or *Ruff*."). Hawkins has not pointed to anything in the record overcoming the state's recitation of the facts and its assertion that the offenses at issue were committed in separate acts.

{¶ 34} As stated above, unless a defendant shows — based on the record — a reasonable probability that his convictions are for allied offenses of similar import committed with the same conduct and without a separate animus, he cannot demonstrate that the trial court's failure to inquire whether the convictions merged for sentencing was plain error. *Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 3, 29. Hawkins has not met his burden here. Accordingly, the trial court did not commit plain error in failing to merge his convictions for sentencing. *See, e.g., State v. Collier*, 8th Dist. Cuyahoga No. 108687, 2020-Ohio-3033, ¶ 36-38 (where indictment and bill of particulars were not fact specific and defendant failed to cite any information in the record to overcome the state's recitation of facts and its assertion that defendant committed money laundering offenses subsequently and in separate acts, defendant failed to meet her burden of demonstrating a reasonable probability that her convictions for theft and money laundering constituted allied offenses of similar import); *State v. Ross*, 8th Dist. Cuyahoga No. 106167, 2018-Ohio-2738, ¶ 20 (where record contained insufficient facts to determine whether defendant's aggravated robbery and theft convictions involved allied offenses of similar import, trial court did not commit plain error in failing to merge defendant's convictions); *State v. Hilliard*, 8th Dist. Cuyahoga No. 102214, 2015-Ohio-3142, ¶ 28 (where limited facts in the record were insufficient to determine whether defendant's kidnapping and aggravated murder convictions involved allied offenses of similar import, defendant failed to meet his burden of demonstrating a reasonable probability that his convictions constituted allied

offenses of similar import and trial court did not commit plain error in failing to merge the offenses for sentencing); *see also State v. Burrows*, 1st Dist. Hamilton No. C-190277, 2020-Ohio-3646, ¶ 11 (defendant could not prevail on his plain-error claim "merely by arguing that the offenses would merge if additional facts are assumed").

{¶ 35} Hawkins' first assignment of error is overruled.

**Sentencing under the Reagan Tokes Law**

{¶ 36} In his second, third and fourth assignment of errors, Hawkins contends that the trial court erred in sentencing him to an indefinite sentence on Count 4 under the Reagan Tokes Law. Under the Reagan Tokes Law, qualifying first- and second-degree felonies committed on or after March 22, 2019 are subject to the imposition of indefinite sentences. Hawkins argues that the Reagan Tokes Law is unconstitutional because it violates his constitutional rights to trial by a jury, separation of powers and due process.

{¶ 37} The arguments presented in this case do not present novel issues or any new theory challenging the constitutional validity of any aspect of the Reagan Tokes Law left unaddressed by this court's en banc decision in *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.).[1] Accordingly, we overrule Hawkins' second, third and fourth assignments of error.

{¶ 38} Judgment affirmed.

---

[1] In his appellate brief, Hawkins acknowledges that "these particular arguments have been rejected by this Court." (Appellant's br. at 4.)

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR